HALL VS M'HENRY.

*Construction of the act of* 1807, *upon the subject of indemnifying bonds to sheriffs.*

1. Where a plaintiff in execution fails or refuses, on the application of a sheriff, to give a bond of indemnity, as directed by the statute of 1807,* and the sheriff has reasonable doubts whether the right in property levied on, be in a defendant,—such sheriff cannot be compelled to receive the bond of a co-defendant, a surety, and sell the property.

On a writ of error to the Circuit Court of Shelby county.

In this cause, an action of trespass on the case, was prosecuted by Hall, the plaintiff in error, to recover damages of M'Henry, for the refusal of the latter to sell as a sheriff, certain property levied on under an execution issued against one Royster, and the plaintiff as his surety. The plea was not guilty, upon which a verdict was rendered for the defendant.

The plaintiff, in support of his action, proved that he was the surety of Edward Royster, in the suit of John and Margaret Martin, administrator and administratrix *vs* Edward Royster and plaintiff, theretofore decided in that Court—[the same cause recited in the declaration in this case.]

The plaintiff further proved that defendant, M'Henry, admitted, some days before the levy was

*Aikin's Digest, 167—sec. 43.

made on Royster's negroes, or rather, slaves found in the possession of Royster, that plaintiff was the surety of Royster, and that it would be hard for plaintiff to have the debt to pay.

Plaintiff further proved by Thomas H. Brasher, that he, Brasher, acted as the agent of plaintiff, on the day appointed for the sale of the slaves, and called upon the defendant, to know of him, if he would receive a bond of indemnity from him : that defendant replied, he would not—that the plaintiffs in execution, alone had a right to indemnify him ; and that he could not receive a bond from any one else. Brasher stated that he made the application to indemnify defendant, in good faith, and had he consented to receive a bond, he would have executed it. Brasher's solvency was admitted.

It was further proved by the plaintiff, that defendant after the hour of four o'clock, which was more than ten days after notice given on the day fixed for the sale, returned the slaves into the possession of Edward Royster, who, a short time thereafter, ran the negroes out of the country.

The plaintiff proved further, by the witness, Brasher, as also by the records of the said Court, that plaintiff, T. B. Hall, paid eight or nine hundred dollars of the judgment in the case of *Martins vs Royster* and plaintiff, above referred to.

The defendant proved that the property levied on, to wit, the two slaves, were claimed by persons, other than Royster ; some of whom, resided in Royster's family ; that public opinion was divided as to whom they did really belong ; that some said they were Royster's property, while others said they

thought the property belonged to the adverse claimants.

Defendant further proved, a notice to the plaintiff, and that the Martins refused to execute a bond, as required by said notice.

Plaintiff proved the slaves to have been in the possession of Royster, more than twelve months previous to the levy, and to have been worth from six to eight hundred dollars.

Upon these statements of facts, the Court, among other things, instructed the jury, that if a doubt arose, whether the property levied on, belonged to the defendant in execution, Royster, or some other party, the sheriff had a right to require of the plaintiffs in execution, a bond, with surety for his indemnity; and in the event of a failure to give such bond, within ten days after a requisition for it, he might deliver up the property to the party from whose possession it was taken:—that this doubt should not be merely ideal or imaginary, but a doubt founded upon such a state of facts or circumstances as would well induce the belief that the right to the property was in another, than the defendant in execution.

The Court further instructed the jury, that the law which authorised the sheriff to make the requisition for security, where the right of the defendant in execution was doubtful, was intended for the benefit of the sheriff; and that the law authorised the sheriff to make the application to the plaintiff in the execution, and to discharge the property if the bond of indemnity was not given within the time prescribed by the statute, and that the sheriff

was not required to receive a bond from the co-defendant in the execution, though he was but a surety—such bond, if received by the sheriff, would doubtless, be a good common law bond, but one on which he could have no remedy, until he had actually been injured by a recovery against him; and then he should prosecute a suit according to the ordinary forms of law—while on a bond executed by the plaintiff in execution, the remedy would be summary.

To all which the plaintiff excepted, and prosecuted a writ of error.

*Chilton* for plaintiff in error—*Peck* contra.

HOPKINS, C. J.—This was an action of trespass on the case. The proof upon the trial of the cause was, that the defendant in error, who was defendant also in the Court below, had before the commencement of the action in this case, levied an execution in favor of John and Margaret Martin, against one Edward Royster and the plaintiff in error, upon two slaves, as the property of Royster. That it was doubtful to whom the slaves belonged, as they were claimed by other persons than Royster; and public opinion was divided on the question, whether Royster or the other claimants owned the property. The defendant in error, required the plaintiff in the execution, to indemnify him in the mode prescribed by our statute law, for the sale of the slaves, and they refused to do so. That after the lapse of more than ten days from the time he applied to the plaintiffs in the execution to indem-

nify him, he delivered the slaves to Royster, from whose possession he had taken them, when he made the levy of the execution:   That the plaintiff in error was the surety of Royster, for the debt for which the execution issued, and the defendant knew he was surety before the levy was made: That after the possession of the slaves was restored to Royster, he ran them from the country:  That the plaintiff in error afterward paid eight or nine hundred dollars, on the execution—a sum which was about equal to the value of the slaves, and that while the sheriff had the possession of the slaves, the plaintiff in error, offered to give him a bond for his indemnity, if he would sell.   The sheriff refused to accept a bond from the plaintiff, on the ground that the plaintiffs in execution, were the only persons from whom he could take such a bond.

The material parts of the charge of the Court below, to the jury were, that the sheriff had the right to require a bond, with securiry for his indemnity, from the plaintiffs in the execution, and if they failed to give him such a bond, within ten days after he required it, he might deliver the property to the party, from whose possession he had taken it; but the doubt of the sheriff, as to whom the property belonged, which would authorise him to restore the property to the party from whose possession it was taken, upon the failure of the proper party to give a bond of indemnity, must be founded upon such facts or circumstances, as might well induce the belief, that the right to the property was in another person than the defendant in the execution.  The Court

also instructed the jury, that the sheriff was not required to receive a bond from a co-defendant in the execution, who was a surety only for the debt.

The instructions of the Court were excepted to by the plaintiff.

The course which the defendant, as sheriff, pursued, was the one which the act of eighteen hundred and seven prescribes for sheriffs. in such a case.*

The act of eighteen hundred and eleven, which requires sheriffs to levy executions that issue against principals and sureties, on the property of the principal first, provided the surety makes an affidavit that he is surety, does not affect the act of eighteen hundred and seven, and would have no effect in favor of the plaintiff, if he had made such an affidavit as the act prescribes. Although such an affidavit may be made, yet if after a levy, there be a doubt as to the principal defendant's right to the property, the sheriff is entitled to the benefit of the course provided by the act of eighteen hundred and seven. An affidavit, if made, creates a duty on him, to levy upon the property of the principal first; but after a levy made, under any circumstances, he is not bound to sell, if there be a reasonable doubt as to the right of the defendant in the execution to the property. The object of the act of eighteen hundred and seven was, to indemnify sheriffs against recoveries or suits, in favor of the right owners or claimants of property, which is sold in virtue of executions. The act gives sheriffs a right to demand of the plaintiffs in executions, bonds on which they may rely for indemnity from the consequences of

Aikin's Dig. 167.

acts in selling property, which may afterward be proved to have been traspasses on the rights of others; and a Court ought not to decide that such a right may be satisfied, by a bond of any other person, than the plaintiff in the execution.

We think there was no error in the instructions of the Circuit Court.

The judgment is affirmed.

COLLIER, J. not sitting.